**REGION PROPERTIES, INC., et al.,**
**Plaintiffs,**

v.

**APPALACHIAN POWER COMPANY,**
**Defendant.**

**Civ. A. No. 73-C-63-R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Dec. 10, 1973.

See also D.C., 364 F.Supp. 1273.

W. Heywood Fralin, Roanoke, Va., and Donald L. Mooers, Washington, D. C., for plaintiffs.

James F. Johnson, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

### OPINION and JUDGMENT

DALTON, District Judge.

Plaintiffs initiated this action for treble damages against the defendant, Appalachian Power Company, for injuries allegedly sustained by plaintiffs and other members of the class represented by them by reason of defendant's violations of 15 U.S.C. §§ 1 & 2 (Sherman Act) and 15 U.S.C. § 14 (Clayton Antitrust Act). Plaintiffs are individuals or corporations who have built residential dwellings in Virginia during February, 1967 through April, 1970, and who pursuant to Appalachian's underground electric service plans were required to pay a charge for the installation of underground electric service for various purposes in such dwellings. Appalachian is a state regulated utility supplying electricity to areas of Virginia and West Virginia. Electricity transported and sold by Appalachian is used for illumination, space heating, air conditioning, water heating, cooking, and to serve various other residential, commercial and industrial energy requirements.

The plaintiffs allege that prior to 1960, practically all residences served by Appalachian obtained electrical power through overhead distribution lines. Beginning in the early 1960's, however, a uniform shift to underground installation of residential distribution lines occurred. FHA and VA and most of the mortgage bankers now require it when feasible. In addition, local governments in the Appalachian service areas have adopted, or are considering, ordinances requiring underground distribution lines in new residential developments. Furthermore, competitive considerations and the superiority of underground installation from an aesthetic viewpoint have made underground installation a necessity, even where not required by local law or in order to obtain financing.

The plaintiffs contend that Appalachian has seized upon the demand for underground installation as an opportunity to prevent builders and developers from freely choosing between competing energy sources. They assert Appalachian, relying on its monopoly position as the only company in its franchise areas authorized to supply underground distribution lines and as the sole source of energy for interior illumination and many household appliances, has maintained an underground wiring program by which it has offered free or reduced-cost underground installation to developers and builders who agree to construct their buildings so that electricity will be used exclusively for all energy purposes. This program has been implemented by negotiating promissory notes for the estimated amount by which the cost of providing underground service exceeds the cost of providing overhead service. The amounts of indebtedness are forgiven by a series of credits based upon revenues generated by the all-electric houses. Additionally, plaintiffs allege, Appalachian has refused comparable free or reduced-cost underground installation to developers or builders who refuse to enter into such agreements.

Consideration of this action begins with the Fourth Circuit's recent decision in Washington Gas Light Co. v. VEPCO, 438 F.2d 248 (4th Cir. 1971), a controversy quite similar to this litigation. In *Washington Gas Light*, the Washington Gas Light Co. brought a private antitrust suit against the Virginia Electric and Power Company, attacking its underground residential distribution plan, a program very similar to that provided by Appalachian. The district court ruled that VEPCO's practice was a per se violation of the Sherman Act as an illegal tying arrangement, and also a violation of the Clayton Act as an exclusive dealing arrangement. The Fourth Circuit reversed, holding the "state action" exemption of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), applicable to VEPCO's practices. The Court noted that to be exempt from the

antitrust laws "the acts complained of must be the result of state action, either by state officials or by private individuals 'under the active supervision' of the state. . . . " 438 F.2d at 251. The Virginia State Corporation Commission, it found, is a regulatory arm of the state, possessing the authority and powers necessary to qualify under *Parker*. The Court reached this determination although the State Corporation Commission made no investigation and gave no approval to the VEPCO practices in question. The Court inferred that silence meant approval of the plans, and that therefore, there was state action. This inference was legitimate, the court opined, since the Commission "possessed adequate regulatory powers to stop VEPCO if it chose to do so, and that eventually SCC spoke affirmatively and first modified and finally ended the promotional practices upon which the suit was based." In conclusion, the court declared that "VEPCO's promotional practices were at all times within the ambit of regulation and under the control of SCC," and hence exempt from the antitrust laws. 438 F.2d at 252.

As previously noted, the present litigation is very similar to *Washington Gas Light*. However, plaintiffs argue it is distinguishable and therefore not exempt from the prohibitions of the antitrust laws pursuant to the *Parker* doctrine. Plaintiffs' initial allegations, that Appalachian engaged in "unlawful tie-ins" in violation of 15 U.S.C. § 1; "unlawful exclusive dealings" in violation of 15 U.S.C. §§ 1 & 14; and "unlawful restraint of trade and conspiracy to monopolize and monopolization" in violation of 15 U.S.C. §§ 1 & 2, resemble the plaintiffs' complaint in *Washington Gas Light*. Plaintiff's Complaint at ¶s 13–18. The court is of the opinion that these allegations contest activities within the authority and control of the SCC, and consequently within the *Parker* exemption according to *Washington Gas Light*. The court, therefore, need not consider the merits of these allegations absent facts establishing that Appalachian's activities are not immune from antitrust prohibitions.

■ Plaintiffs contend that Appalachian's practices are not exempt because the SCC has failed to exercise meaningful regulation of Appalachian, thereby destroying the necessary "state action." Plaintiffs allege that the terms of the SCC Opinion of October 17, 1966, relating to promotional allowances and practices of electric companies in providing underground electric service, are vague and ambiguous because they establish guidelines for charges for underground service which are conflicting and fail to provide for the period of years of revenue to be considered in arriving at such charges. Additionally, they argue the SCC has failed to remedy the activities complained of because the SCC Opinion of April 5, 1970, which prohibits all promotional allowances of electric utilities based on anticipated revenues for the installation of electric service, permits commitments under prior plans to be fulfilled. Furthermore, they contend since the SCC does not have the authority to assess damages or grant monetary relief, but rather only to adjust rates or allowances established by the utilities under its authority, it is incapable of exercising meaningful regulation.

In rendering its decision in *Washington Gas Light*, the Fourth Circuit considered the 1966 and 1970 SCC Opinions. 438 F.2d at 250 and n.2. Likewise, the argument concerning the SCC's inability to award monetary relief was inferentially covered by the Fourth Circuit's decision, as the SCC did not then have the authority to assess damages. Plaintiffs' argument that the SCC has failed to exercise meaningful regulation of Appalachian was therefore implicitly rejected in *Washington Gas Light*.

Plaintiffs also assert that Appalachian has violated the SCC Opinion of October 17, 1966 by imposing credits or charges based upon the estimated amount by which the cost of providing underground electric service exceeds overhead service. In addition, they allege Appalachian has

violated the 1966 Opinion by allowing credits only for each "total-electric" home, while the Opinion requires allowances based on estimated consumption and specifically proscribes tying credit to the "total-electric" concept. Furthermore, they contend this "total-electric" credit program violates the plans Appalachian filed with the SCC pursuant to the 1966 Opinion. The filed plans require developers and builders to pay an amount equal to the cost of the underground facilities less a credit based on the estimated revenue to be received by Appalachian during the first year with additional credits during subsequent years based on revenue actually received and with a final credit adjustment at the end of the fifth year based on the revenue received during the fifth year less all previous credits. Instead, plaintiffs contend that credit allowances are conditioned upon their agreeing to use electrical power exclusively.

The court is not convinced that these allegations destroy the immunity provided by SCC regulation. Although the plaintiffs attempt to distinguish their situation due to Appalachian's alleged violations of the SCC Opinions and the plans filed with the Commission, thereby establishing the ineffectiveness of the Commission's regulation, examination of these allegations reveals that they are particularly appropriate for resolution by the Commission. As our Court of Appeals stated, "[t]he antitrust laws are a poor substitute, we think, for plaintiff's failure to promptly protest to the SCC and to seek the administrative remedy ultimately shown to have been available and effective." 438 F.2d at 252. The SCC has the authority and power to regulate the rates of Virginia public utilities. Va.Code Ann. §§ 56–235, 56–236, 56–238, 56–239 and 56–247. (Repl. Vol.1969). Appalachian's underground electric service plans which were in effect during the period in question were filed with the Commission. Whether or not the particular practices of the Appalachian Power Co. violated SCC standards is a question to be resolved by the SCC, and not by a federal court in an antitrust action.

For the aforementioned reasons defendant's motion for summary judgment is hereby granted, and the action is ordered dismissed without costs.